UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN SIMMONS, | Case No. 4:14-cv-294-BLW |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| BATTELLE ENERGY ALLIANCE, LLC, organized in Delaware, | |
| Defendant. | |

## INTRODUCTION

The Court has before it plaintiff's motion to unseal.  The motion is fully briefed and at issue.  For the reasons expressed below, the Court will grant the motion.

## BACKGROUND

Brian Simmons sues defendant Battelle Energy Alliance, LLC, alleging he was wrongfully exposed to Plutonium-239 while working on November 8, 2011.  He claims that he was ordered to handle, without appropriate safety gear, fragile containers known as "clamshells" that contained highly radioactive Plutonium-239.  He alleges that as he handled the clamshells, they fell apart, releasing the Plutonium-239 and exposing him and others to radioactive waste.  He seeks to recover for his injuries in this lawsuit.

On January 27, 2016, Simmons's counsel deposed Ted Lewis, former Independent Safety Review Committee Chair of Battelle's Materials and Fuel Complex.  Initially,

Battelle sought to designate Lewis's entire deposition and several exhibits as "confidential" under a protective order that had been agreed upon by counsel and approved by the Court.[1]  The parties then conferred, and Battelle withdrew its blanket confidential designation.  Instead, Battelle sought to designate as confidential specific portions comprising the majority of Lewis's deposition and Exhibits 3, 6, 7, 8, and 9 to that deposition.[2]  Those items have all been filed under seal, and Simmons' motion asks the Court to unseal those specific items.

Before addressing the governing legal standard and applying that standard to each item in dispute, the Court will review the background of this dispute.  All of the disputed items essentially relate in one way or another to three documents:  (1) DSA-006-ZPPR; (2) the White Paper; and (3) SAR-412.  The full name of the DSA-006-ZPPR is the Documented Safety Analysis for the ZPRR.  It identifies the likelihood of radiation

---

[1] The parties' protective order defines "confidential" as:

Discovery in this case will require the production of documents and disclose information which the parties or designating party consider confidential and/or proprietary in nature and which requires protection against unrestricted disclosure and use. Materials that may be designated as confidential and/or proprietary include information (regardless of how generated, stored or maintained), testimony, or tangible things obtained during discovery in this action that reveal a trade secret, or other confidential research, development, or financial information that is commercially sensitive, or that otherwise is entitled to protective treatment under Fed. R. Civ. P. 26(c), and personal information that is protected from disclosure by statute, regulation, or otherwise entitled to protection from public disclosure. Such confidential and/or proprietary information shall be referred to herein as "Confidential."

*Protective Order* pp. 1-2, Dkt. 13-1.  Confidential documents may be shown only to specific people and must be filed under seal. *Id.* at 3-5.

[2] Battelle conceded in its briefing that it had no objection to unsealing Exhibits 4 and 5, originally sought by Simmons to be unsealed.  The Court will therefore grant the motion as to those two exhibits.

exposure at the ZPPR and the safety controls necessary to protect workers, the public, and the environment.  It was prepared prior to the incident involving Simmons and concludes that the likelihood of such an event – that is, the likelihood of radiation exposure from handling the clamshells – is "Extremely Unlikely."  *See DOE Accident Investigation Report (Dkt. No. 17-2)* at p. 43.

That conclusion was disputed by Battelle's Review Safety Chairman, Ted Lewis. He wrote a "White Paper" warning that the likelihood of radiation exposure from the handling of the clamshells was much greater than its then-labeled category of "Extremely Unlikely."  *See Lewis Deposition (Dkt. No. 32-2)* at pp. 90-91; *see also DOE Accident Investigation Report, supra.*  After the White Paper was issued, Battelle drafted a report that was intended to update the DSA-006-ZPPR – this new report was known by its acronym "SAR-412."  Its full name is "Safety Analysis Report:  Basis for Interim Operation for the Zero Power Physics Reactor Complex."

The SAR-412 is a 118-page report that identifies the likelihood of radioactive exposure at the ZPPR facility from fire, earthquake, transport, and handling, among other safety hazards.  It also discusses the controls in place to protect workers, the public, and the environment from radioactive exposure.  In accordance with the White Paper, it upgrades the risk of radiation exposure from handling the clamshells from "Extremely Unlikely" to "Anticipated."  *See Lewis Deposition, supra,* at pp. 90-94.

But the SAR-412 was never finally approved, and it remained only as a draft report.  Consequently, the DSA-006-ZPPR continued to be the safety analysis that governed the ZPPR.  *See DOE Accident Investigation Report, supra,* at p. 40.

Following Simmons' exposure, the Department of Energy (DOE) conducted a detailed investigation that is set forth in the Accident Investigation Report.  That report was issued to the public, and discusses in detail the safety concerns and controls set forth in the DSA-006-ZPPR, the White Paper, and the SAR-412.

The exhibits and deposition testimony that Simmons now seeks to unseal were not sealed by the Court, but were rather sealed by the parties pursuant to their agreed-upon Protective Order.  That Order states that both parties reserved the right to challenge any sealing under that Order.  Thus, Battelle's argument that Simmons waived its right to unseal documents sealed pursuant to the Protective Order must be rejected.

Simmons now seeks to exercise that right and unseal certain deposition testimony and exhibits attached to that deposition.  That deposition and those exhibits discuss the DSA-006-ZPPR, the White Paper, and the SAR-412.  Because the contents of all three of those documents were discussed in detail in a publically released document, Battelle must make a particularized showing as to why deposition testimony and exhibits that discuss the same publically-disclosed matters must remain sealed.

## LEGAL STANDARD

"Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point."  *Kamakana v. City & Cnty. of*

*Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation and quotation marks omitted).  A party seeking to seal a judicial record must overcome this presumption by showing either "compelling reasons" or "good cause." *Id.* at 1180.

Compelling reasons must be "supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure . . . ." *Id.* at 1178-79 (citation and quotation marks omitted).  What constitutes a compelling reason is "best left to the sound discretion of the trial court." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978).  The Court must "balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamakana*, 447 F.3d at 1179 (citation and quotation marks omitted).  If the Court decides to seal records after considering these interests, "it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (citation and quotation marks omitted).  Generally, "compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (citation and quotation marks omitted).

While less-stringent, the good cause standard still requires a "particularized showing" that "specific prejudice or harm will result" if the information is made public. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).  Thus, "[b]road allegations of harm, unsubstantiated by specific examples of articulated

reasoning" will not overcome the strong presumption in favor of public access.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation and quotation marks omitted).

The Ninth Circuit has typically applied the compelling reasons standard to records attached to dispositive motions, while applying the good cause standard to records attached to non-dispositive motions.  *Kamakana*, 447 F.3d at 1180.  Recently, however, the Ninth Circuit shifted to reviewing the underlying motion's relationship to the merits of the case.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).  *Auto Safety* held that documents attached to a motion that is "more than tangentially related to the merits of a case" are subject to the compelling reasons standard, while documents attached to a motion that does not have more than a "tangential" relationship to the merits of the case are subject to the good cause standard. *Id.*

The Court finds it unnecessary to decide which standard applies in this case because the same result is reached under either standard.

## DISCUSSION

### 1. Exhibit 3

Exhibit 3 is a list of names of 14 people with whom Ted Lewis discussed the "White Paper," discussed above.  *See Exhibit 3 (Dkt. No. 32-2)* at pp. 48-49.  Battelle has conceded that the White Paper should be unsealed, but argues that because Exhibit 3 mentions SAR-412, it should be sealed.  But Exhibit 3 does not discuss the contents of

SAR-412 in any manner, and SAR-412 was identified in the publically released DOE

Accident Investigation Report.  Battelle offers no reason to keep confidential that list of

names.  Hence, Battelle has not even satisfied the good cause showing necessary to

justify the sealing of Exhibit 3.

**2.     Exhibit 6**

Exhibit 6 is a one-page memo from Ted Lewis to Battelle Manager Phil

Breidenbach.  *See Exhibit 6 (Dkt. No. 32-2)* at p. 70.  It is dated June 23, 2011, about five

months before Simmons was exposed to radiation.

In the memo, Lewis discusses potential radiation exposure at the ZPPR and

identifies specific problems, including the leaking of sodium plates stored in a particular

building.  The memo also discusses potential radiation exposure at the RSWF, describing

the materials used to construct storage containers.

Battelle argues Exhibit 6 should be sealed because its disclosure would be

"directly adverse to national interests, national security, and, frankly, the safety of the

public."  *See Defense Brief (Dkt. No. 35)* at p. 16.[3]  Yet, portions of Exhibit 6 have been

revealed to the public.  For example, the memo's discussion of "[p]otential radiation

---

[3] Battelle also claims Exhibit 6 is exempt from public disclosure under its Official Use Only (OUO) policy.  To be properly designated as an OUO document, the document must (1) have the potential to damage "governmental, commercial, or private interests"; (2) be exempt from public disclosure under FOIA; and (3) contain an OUO stamp identifying the specific FOIA exemption.  *OUO Policy (Dkt. No. 35-3)* at p. 2.  While Exhibit 6 is stamped as "OFFICIAL USE ONLY," Battelle has not identified a specific FOIA exemption in its briefing that would apply to this Exhibit.  Accordingly, the Court will not exempt Exhibit 6 from disclosure on this ground.

exposure at ZPPR" was discussed at length in the DOE's Accident Investigation Report, which is publicly available. *See DOE Report, supra*; *Exhibit 6* at p. 70. Moreover, the discussion in Exhibit 6 concerning leaking sodium plates stored in Building 784 – a part of the ZPPR facility – was also publically disclosed in the DOE's Accident Investigation Report. *See DOE Accident Investigation Report, supra*, at § 1.2. Battelle offers no justification to seal this information.

Battelle also seeks to seal the memo's discussion of (1) "[p]otential radiation exposure at RSWF," (2) the RSWF facility's fuel storage, (3) a request for changes in the "Hot Cell" facility, and (4) an employment recommendation. *Ex. 6* at p. 70. Even under the less-stringent good cause standard, Battelle must make a "particularized showing" that "specific prejudice or harm will result" if the information is made public. *Foltz,* 331 F.3d at 1130. "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not overcome the strong presumption in favor of public access. *Beckman,* 966 F.2d at 476. Battelle has made no such specific showing for any of these four items, and hence Battelle's request to seal these items shall be denied.

**3.     Exhibit 7**

Exhibit 7 is the SAR-412; it includes only one of the seven chapters in that document. Thus, chapters detailing a description of the site and the ZPPR facility are not included. The one chapter that comprises Exhibit 7 is entitled "Hazard and Accident Analysis" and its contents are clearly relevant to the claims in this lawsuit. Battelle has made no particularized showing that anything in this single chapter of the SAR-412

should be sealed, especially given the public discussion of these very hazards in the

DOE's Accident Investigation Report.

Battelle does argue that Exhibit 7 is exempt from public disclosure under FOIA

Exemption 7, 5 U.S.C. § 552(b)(7).[4]  Under Exemption 7, Battelle must show that it

created SAR-412 under its law enforcement authority, not its administrative authority.

*Church of Scientology of Calif. v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979).

Battelle cannot make this showing.  Exhibit 7 itself states that it was created to comply

with the DOE's safety basis requirements.  *See Exhibit 7 (Dkt. 32-3)* at p. 15.  The DOE's

safety basis requirements mandate Battelle to prepare a documented analysis of the ZPPR

facility.  *See* 10 C.F.R. § 830.202(b).  This analysis must address the work performed at

the ZPPR facility and identify any associated hazards to assess the working conditions,

---

[4]  5 U.S.C. § 552(b)(7) exempts from public disclosure:

[R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

5 U.S.C. § 552(b)(7).

safety concerns, and hazard controls necessary to protect employees, the public, and the environment. *Id.* This analysis ultimately determines whether the ZPPR facility can be operated safely and securely. *See id.*

The Court is persuaded that Battelle acted within its sphere of administrative authority rather than its sphere of law enforcement authority when creating Exhibit 7. Consequently, § 552(b)(7) is inapplicable here. *Cf. Keep Yellowstone Nuclear Free v. U.S. Dep't of Energy*, No. 06-CV-205-D, at *8-15 (D. Wyo. Sept. 24, 2007) (Dkts. 37-2, 37-3) (holding that § 552(b)(7) does not exempt from public disclosure DOE safety basis requirements analyses prepared under 10 C.F.R. § 830.202).

Because Battelle has shown neither compelling reasons nor good cause, Exhibit 7 will not be sealed.[5]

**4.     Exhibit 8**

Exhibit 8 is a three-page internal memorandum summarizing the Safety Review Committee's review of the latest revisions to DSA-006-ZPPR. *See Exhibit 8 (Dkt. No. 32-2)* at pp. 71-73. As discussed above, the DSA-006-ZPPR contained the safety protocols governing the ZPPR at the time Simmons was exposed to radiation. This document was discussed in detail in the DOE's publically distributed Accident Investigation Report.

---

[5] Battelle also claims Exhibit 7 is exempt from public disclosure under its OUO policy. Nevertheless, the Court's conclusion that § 552(b)(7) does not exempt Exhibit 7 from public disclosure obviates the need to treat Exhibit 7 as an OUO document.

Battelle's sole contention is that Exhibit 8 should be sealed under 48 C.F.R. § 952.209-72(b)(2).  That regulation is entitled "Organizational conflicts of interest."  Its purpose "is to ensure that the Contractor (1) is not biased because of its financial, contractual, organizational, or other interests which relate to the work under this contract, and (2) does not obtain any unfair competitive advantage over other parties by virtue of its performance of this contract."  48 C.F.R. § 952.209-72(a).  Thus, § 952.209-72 operates to prevent contractors from using insider information to gain an unfair competitive advantage, not to prevent disclosure of information to the public.  This regulatory provision, therefore, cannot justify sealing Exhibit 8.[6]

## 5.   Exhibit 9

Exhibit 9 is a 5-page memo from Battelle's Safety Review Committee reviewing proposed revisions to SAR-412.  *See Exhibit 9 (Dkt. No. 32-2)* at pp. 74-77.  Battelle contends Exhibit 9 should be sealed because it implicates "national security, national safety, and the safety of INL employees."  *See Battelle Brief (Dkt. No. 35)* at p. 17.  Battelle further argues Exhibit 9 should be sealed because it discusses Exhibit 7, which, according to Battelle, should also be sealed.

Neither argument is persuasive.  The Court has already discussed why Exhibit 7 should be unsealed.  Exhibit 9 contains 25 proposed edits to SAR-412, each proposal

---

[6] Battelle similarly argues each Exhibit is confidential under 48 C.F.R. § 952.209-72.  The Court's conclusion that 48 C.F.R. § 952.209-72 does not require Exhibit 8 to be sealed applies equally to Exhibits 3, 6, 7, and 9

contained in a single sentence.  Battelle has made no showing that these 25 bullet points compromise national security or the safety of INL employees.  Consequently, there is no justification for sealing Exhibit 9.

**6.      Ted Lewis's Deposition**

Battelle seeks to seal or redact portions comprising the majority of Ted Lewis's deposition. *Lewis Depo.* pp. 1-43, Dkt. 32-2.  Battle argues these portions of Lewis's deposition should be sealed because they discuss the contents of Exhibits 3, 6, 7, 8, and 9, and "contain[ ] an extensive discussion of operational and safety protocols." *See Battelle Brief (Dkt. No. 35)* at p. 18.

Much of the deposition contains Lewis's testimony regarding the White Paper he prepared.  As discussed above, the White Paper is to be unsealed and so the deposition testimony concerning it should be similarly unsealed.  The rest of the deposition concerns a discussion of the exhibits that will be unsealed pursuant to the Court's discussion above.  Thus, the disputed portions Lewis's deposition will not be sealed.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to unseal (docket no. 31) is GRANTED.  The Court orders that the Lewis deposition and Exhibits 3, 6, 7, 8, and 9 be unsealed.



DATED: June 23, 2016

B. Lynn Winmill
Chief Judge
United States District Court